## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATHLEEN HUDSON,** | ) | **CIVIL ACTION NO.**  2:20-cv-1580 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SERVICE CORPORATION** | ) | |
| **INTERNATIONAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

### I.      PRELIMINARY STATEMENT

By this action, Plaintiff, Kathleen Hudson, seeks compensatory and punitive damages, and attorneys' fees and costs for being subjected to a hostile work environment by Defendant, Service Corporation International, based on her gender.  She also seeks the same remedies, in addition to wage loss, for Defendant terminating her employment because of her gender, and/or in retaliation for her complaints of sexual harassment, and/or because of her disability, for which it failed to accommodate her, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., respectively.  Finally, Plaintiff seeks similar damages for parallel violations of the Pennsylvania Human Relations Act, 42 P.S. § 951 et. seq.

## II.    JURISDICTION

1.      This court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States.

2.      This court also has jurisdiction of this matter under 28 U.S.C. § 1367, in that this is a civil action of which this federal district court has original jurisdiction, and certain of Plaintiff's claims are brought under Pennsylvania state law, which are related to the federal claims in this action in that they form part of the same case or controversy under Article III of the Constitution of the United States.

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship, and the acts constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

4.      On January 28, 2019, Plaintiff filed a Charge of Discrimination with the EEOC against Defendant, alleging a sexually hostile work environment claim, failure to accommodate, and gender discrimination, disability discrimination and retaliation related to the termination of her employment.  Plaintiff's Charge was dual filed with the PHRC.

5.      On July 22, 2020 the EEOC issued a Notice of Right to Sue to Plaintiff. Additionally, more than one year has passed since Plaintiff's Charge was filed with the PHRC. Accordingly, Plaintiff has met all of the requirements for filing this Complaint.

### III.    PARTIES

6.      Plaintiff, Kathleen Hudson ("Hudson"), is an adult female who resides at 73 Bartholomew Road, Mercer, PA 16137.  At the time of the incident complained of in this lawsuit and presently, she was and is a citizen of the Commonwealth of Pennsylvania and the United States of America.

7.      Defendant, Service Corporation International ("SCI"), is a Texas corporation with its business headquarters located at 1929 Allen Parkway, Houston, TX, 77019.

### IV.    STATEMENT OF CLAIM

8.      Hudson came to work at Saul-Gabauer Funeral Home and Sylvania Hills Memorial Park ("Saul-Gabauer"), a funeral home located in Rochester, PA owned by SCI, because Robert Saul ("Saul"), the General Manager, personally recruited her.  For approximately one year, Hudson showed up every week at the J.C. Penney location where Hudson worked and tried to convince her to come work for him.  These interactions frequently involved flirting on Saul's part as well.

9.      Finally, in January 2018, Hudson accepted a position at Saul-Gabauer.  After she accepted but prior to her start date, Saul came to J.C. Penney as usual and engaged Hudson in conversation.  During that conversation, Saul told Hudson about his failed marriages and offered to take Hudson out to eat.  Hudson politely declined the offer.

10.     That proposition concerned Hudson, but since she already had notified J.C. Penney of her new position, she did not back out of the position at Saul-Gabauer.

11.     On February 19, 2018, Hudson began working as a primary care arranger for Saul-Gabauer.

12.     During her first week at work, Saul called her into his office one morning to have a meeting.  In that meeting, Saul made the following proposition, "We should have a drink, and I'll teach you about the funeral business."  In response, Hudson said politely, "I came here to work.  I'm not interested in that."  She also explained that she had a boyfriend.

13.     Following that rejection, Saul began attacking Hudson.  His attacks included, among other things, telling Kathleen on several occasions that she is "pretty, but fat" and that she is a "retard."

14.     In response to Saul's actions, Hudson contacted Renee Guillory, HR Manager at SCI, to report his conduct.  Hudson told Guillory that Hudson believed that she was working in a hostile work environment, detailed Saul's attacks, and explained how she rejected his drink proposition.  Guillory assured Hudson that she would investigate her complaint.

15.     Shortly after Hudson made her first complaint, Saul approached her and angrily explained that Guillory called him and asked him questions.  Saul then forcefully exclaimed, "Why would you say anything like that!" Saul also told Hudson, "Nobody will ever believe you."

16.     As opposed to stopping after Hudson's complaint, Saul actually intensified his efforts.  Hudson then had to endure the following horrendous treatment from Saul: he told her that she looked "haggard;" he tore up interment slips for any perceived mistake and threw them in her face, telling Hudson, "I don't know if you can cut it as a funeral director as a woman;" he talked down to her and called her a "bitch;" he threw pens at her head; and in the presence of Hudson, he told customers that she is "mentally ill."

17.     Saul also told Hudson on several occasions that he hates her.  When Saul first said it, Hudson asked why.  His response was, "I can't stand you, but I like blondes."

4

18.     On another occasion, Saul forcefully grabbed Hudson by her sweater and pulled her along in order to get her to follow him.

19.     Yet another instance occurred when Saul thought Hudson had a smile on her face. Approaching her, Saul made the following threat of violence, "Get the smirk off your face or I'll get it off for you."

20.     Additionally, Saul threatened to "destroy" Kathleen's future in the funeral business.  Following the termination of Hudson's employment, Saul followed through on this threat and interfered with several of Hudson's attempts to get and/or maintain another job in the funeral business.

21.     As Saul continued to create a hostile work environment and retaliate against Hudson for complaining, Hudson continued to make complaints to Guillory about him with the hope that something would change.

22.     Nothing changed, as Saul was unrelenting.  Saul even specifically told Hudson, "I don't trust you," in reference to her HR complaints.

23.     She also complained to Ken Dimond, Market Director, who told her such things as, "You need to correct this yourself," "You are not a good fit," and "Stop complaining, no one is going to listen to you."

24.     Saul-Gabauer terminated Hudson's employment on August 1, 2018.  In Hudson's termination letter, Saul-Gabauer cites to issues with tardiness and performance deficiencies as its justifications, both of which are pretexual reasons.

25.     As soon as Hudson found out that she was terminated, she immediately called Guillory because the reasons provided in Hudson's termination letter were so patently false.

During that conversation, Guillory told Hudson that Guillory had to go along with the decision to terminate her because Saul has been there too long.

26.     Regarding Defendant's stated reason of terminating Plaintiff because of tardiness issues, Hudson suffers from an enlarged thyroid, which causes her a number of problems, including migraines, nausea, and fatigue, among others.  She disclosed her disability at the start of her employment and indicated that it could cause her to be absent or late to work.   Lisa Bennett, office manager, told her that she would be accommodated.

27.     Hudson then provided multiple medical notes to document her absences.

28.     Instead of accommodating Hudson, Saul-Gabauer used her disability against her by issuing her warnings leading up to her termination, as opposed to engaging in the interactive process with her.

29.     Finally, the claim in the termination letter that Hudson admitted that tardiness was an ongoing problem in her life was completely fabricated.

30.     Defendant also claimed in the termination letter that Saul-Gabauer had conversations with Hudson about performance concerns.  In reality, the conversations were Saul's personal attacks mentioned above that arose because Hudson rejected Saul's proposition and complained to HR about his actions.

31.     Moreover, Hudson admits that she made errors in completing IOAs.  When she was hired, Saul told her he was creating this position especially for her.  He told her that her job description was following up with families to address their questions and concerns.  To the extent that she would be expected to complete IOAs, Saul promised to train her, as Hudson told him before she started that she had no experience completing these forms.  He also told her that she wouldn't have to worry about learning the various sections of the cemetery.

32.     However, after Hudson rejected Saul's propositions, his demeanor toward her completely changed.  He failed to keep his promises regarding her job description and gave her no training on the IOAs, despite repeated requests for help from Hudson.

33.     As demonstrated above, Defendant terminated Hudson because of her sex, and/or in retaliation for her complaints of sexual harassment, and/or because of her disability, for which it failed to accommodate her.

34.     As a result of Defendant's aforementioned conduct, Hudson has suffered a loss of past and future wages and benefits, and substantial mental anguish and emotional distress.

### V.     CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF TITLE VII – HOSTILE WORK ENVIRONMENT

35.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

36.     Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

37.     Defendant created a hostile work environment for Plaintiff because of her gender, as noted above.

38.     Husdon has been directly harmed as a result of these violations as is fully set forth above.

### COUNT II – VIOLATION OF TITLE VII – TERMINATION

39.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

40.     Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

41.     Defendant's unlawful acts, practices, policies and/or procedures in employment were induced in whole or in part by its intent to discriminate against Plaintiff on the basis of her gender, female.

42.     Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

## COUNT III – VIOLATION OF TITLE VII - RETALIATION

43.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

44.     Plaintiff engaged in protected conduct under Title VII through her many complaints to HR about Saul's conduct as set forth in detail above.

45.     In response to Plaintiff's complaints to HR, Saul intensified his hostile treatment toward her.

46.     Defendant's decision to terminate Plaintiff was induced by its intent to retaliate against Plaintiff, as evidenced by, among other things, Saul's actions following Plaintiff's complaints to HR, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a).

47.     Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

## COUNT IV – VIOLATION OF ADA – FAILURE TO ACCOMMODATE

48.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

49.     As set forth above, Plaintiff is an individual with a disability because she suffers from an impairment that substantially limits one or more major life activities.

50.     Plaintiff informed Defendant of that disability and requested a reasonable accommodation on several occasions.

51.     Defendant failed to engage in the interactive process and failed to accommodate Plaintiff's disability, despite the availability of reasonable accommodations for Plaintiff's disability.

52.     Defendant failed to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112.

53.     Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT V – VIOLATION OF ADA – TERMINATION

54.     Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

55.     Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and/or procedures in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112.

56.     Defendant's decision to terminate Plaintiff was induced by its intent to discriminate against Plaintiff on the basis of her disability and/or perceived disability as

evidenced by, among other things, Saul's actions following Plaintiff's disclosure of her disability and reasonable accommodation requests.

57.     Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT VI – VIOLATION OF PHRA – HOSTILE WORK ENVIRONMENT

58.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

59.     Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in discriminating against Hudson with respect to compensation, terms, conditions, or privileges of employment in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et. seq.*

60.     Defendant created a hostile work environment for Hudson, as evidenced by the facts as set forth above.

61.     Hudson has been directly harmed as a result of these violations as is fully set forth above.

## COUNT VII – VIOLATION OF PHRA – CONSTRUCTIVE DISCHARGE

62.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

63.     Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of § 955(a) of the Pennsylvania Human Relations Act, 43 P.S. § 955(a).

64.     Defendant's unlawful acts, practices, policies and/or procedures in employment were induced in whole or in part by its intent to discriminate against Plaintiff on the basis of her gender, female.

65.     Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

## COUNT VIII – VIOLATION OF PHRA - RETALIATION

66.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

67.     Plaintiff engaged in protected conduct under the PHRA through her many complaints to HR about Saul's conduct as set forth in detail above.

68.     In response to Plaintiff's complaints to HR, Saul intensified his hostile treatment toward her.

69.     Defendant's decision to terminate Plaintiff was induced by its intent to retaliate against Plaintiff, as evidenced by, among other things, Saul's actions following Plaintiff's complaints to HR, in violation of § 955(d) of the Pennsylvania Human Relations Act, 43 P.S. § 955(d).

70.     Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

## COUNT IX – VIOLATION OF PHRA – FAILURE TO ACCOMMODATE

71.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

72.     As set forth above, Plaintiff is an individual with a disability because she suffers from an impairment that substantially limits one or more major life activities.

11

73.     Plaintiff informed Defendant of that disability and requested a reasonable accommodation on several occasions.

74.     Defendant failed to engage in the interactive process and failed to accommodate Plaintiff's disability, despite the availability of reasonable accommodations for Plaintiff's disability.

75.     Defendant failed to accommodate Plaintiff's disability in violation of § 955(a) of the Pennsylvania Human Relations Act, 43 P.S. § 955(a).

76.     Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT X – VIOLATION OF PHRA – TERMINATION

77.     Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

78.     Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and/or procedures in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.

79.      Defendant's decision to terminate Plaintiff was induced by its intent to discriminate against Plaintiff on the basis of her disability and/or perceived disability as evidenced by, among other things, Saul's actions following Plaintiff's disclosure of her disability and reasonable accommodation requests.

80.     Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a)     Assume jurisdiction herein;

(b)     Declare Defendant's conduct to be unlawful and an intentional violation of

Plaintiff's rights;

(c)     Award Plaintiff wage loss damages, including back pay, front pay, and

lost future earnings, damages associated with the increased tax burden of

any award, and lost fringe and other benefits of employment;

(d)     Award Plaintiff compensatory damages under both the federal and state

law counts and punitive damages under the federal counts;

(e)     Award Plaintiff pre-judgment and post-judgment interest;

(f)     Award Plaintiff costs and attorneys' fees under all counts; and

(g)     Grant such other relief as the Court deems just and appropriate.

Respectfully Submitted,

**JURY TRIAL DEMANDED**                    s/ David B. Spear

David B. Spear
PA Id. No. 62133

Minto Law Group, LLC
603 Stanwix Street, Suite 2025
Pittsburgh, PA 15222